IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| CLUB EXCELLENCE, INC., <br>     Plaintiff, <br><br> v. <br><br> COMTRAN INTERNATIONAL, INC., and <br> MORRIS D. JAFFE, JR. <br>     Defendants and Third-Party Plaintiffs, <br><br> JETRAN, LLC, <br>     Third-Party Plaintiff, <br><br> v. <br><br> VISION ASSET CO., LLC <br>     Third-Party Defendant. | § § § § § § § § § § § § § § § § § <br><br> Cause No. 1:13-cv-00010-JRN |

**SECOND AMENDED THIRD-PARTY COMPLAINT OF
COMTRAN INTERNATIONAL, INC., JETRAN, LLC
AND MORRIS D. JAFFE, JR.**

Pursuant to Federal Rules of Civil Procedure 14 and 15, Defendants and Third-Party Plaintiffs Comtran International, Inc. ("Comtran") and Morris D. Jaffe, Jr. ("Jaffe") and Third-Party Plaintiff, Jetran, LLC ("Jetran") submit the following Second Amended Third-Party Complaint against Vision Asset Co., LLC ("Vision"), and in support would show as follows:

### I.   INTRODUCTION

1.   Comtran executed a Note in favor of Vision for $1.6 million. Jaffe personally guaranteed the Note. Thereafter, Vision and Comtran agreed to an offset against the Note because Vision owed an affiliated company, Jetran, money arising from obligations on two aircraft leases. Vision, Comtran and Jetran agreed to offset the amount owed by Vision under those lease agreements against the Note.

2. Then, Vision assigned the Note to Club Excellence, Inc. (an insider that owns 50-70% of Vision). At that time, the Note was subject to the offset. Club now sues Comtran and Jaffe seeking to recover the entire amount of the Note plus interest, with no credit for the offset. A copy of Plaintiff's Original Complaint was attached to Defendants' Original Third-Party Complaint and it is incorporated herein by reference.

3. Comtran and Jaffe have asserted the offset as a defense to Club's claim. In addition, Comtran, Jetran and Jaffe assert claims against Vision for breach of contract, fraudulent inducement, unjust enrichment, quantum meruit and a suit for an accounting.

## II.   THIRD-PARTY DEFENDANT

4. Third-Party Defendant Vision is a limited liability company formed under the laws of the State of Nevada and has appeared in this case.

## III.   FACTUAL BACKGROUND

5. Comtran and Jetran are sister companies owned by the same parent company, the Jaffe Group. Comtran and Jetran are aircraft companies. Vision Asset Co., LLC ("Vision") is a holding company for Vision Airlines, which is also in aviation. Club is an owner/member of Vision and it owns and/or controls 50-70% of Vision according to Club's corporate representative.

6. Prior to the time Comtran made the Note, Jetran leased two Dornier 328-310 aircraft to Vision with S/N 3178 and S/N 3179 (the "Leased Aircraft"). Under the Aircraft Lease Agreements (the "Leases"), Vision was required: (a) to return the Leased Aircraft in mirror condition as the aircraft were at delivery, (b) to perform maintenance and repairs to the Leased Aircraft and engines, (c) to maintain the engines of the Leased Aircraft in a Pratt & Whitney engine monitoring/maintenance program, (d) to make payments for a maintenance reserve on the

{W0580146.3}                                    2

Leased Aircrafts' engines and (e) to make payments for a reserve on the Leased Aircrafts' landing gear (collectively, the "Maintenance Obligations").

7. After Comtran made the Note, Vision could no longer afford its obligations under the Leases with Jetran. Vision notified Comtran, Jetran and Jaffe that Vision needed to return the aircraft and break the Leases, and Vision was unable to pay to meet the maintenance and return conditions necessary to place the aircraft in return condition.

8. Instead of Vision paying for its obligations under the Leases with Jetran (which Vision could not afford to do), Vision proposed that the amounts owed by Vision under the Leases with Jetran be offset against the Note owed by Comtran to Vision. Comtran and Jetran accepted the offer and agreed to offset the amounts owed to Jetran under the leases against the Note. In accordance with this agreement, Jetran did in fact agree to accept the cash value instead of actual performance of the Maintenance Obligations owed under the Leases.

9. The amounts owed by Vision under the Leases include costs for Phase I-V Inspection Checks for S/N 3178, Phase I-V Inspection Checks for S/N 3179, the Cost of Repair for the damaged L-Seal to engine PW 306B PCE CD-0137; Landing Gear Reserve for S/N 3178, Landing Gear Reserve for S/N 3179, Engine Maintenance Reserve for S/N 3178, Engine Maintenance Reserve for S/N 3179 and the loss in value to the engines due to Vision's default from the Pratt & Whitney engine monitoring program, which all told exceeded the amount due on the Note.

10. Vision later assigned the Note to Club. *Pl.'s Orig. Compl. ¶ 11.* Club denies that the Note is subject to an offset even though Club was aware of the claim prior to the assignment.

11. Although Vision denied the existence of an offset in its Answer, Vision has since admitted the existence of the offset agreement. In response to requests for admission in this case,

Vision admits that it made an agreement with Comtran to offset amounts owed under the Leases against the Note based on return conditions not being met by Vision under those agreements. *Vision Resp. Adm. No. 5.* Vision also admits that the Note was subject to an offset for the amount owed under the Leases. *Vision Resp. Adm. No. 9.*

## IV.   THIRD-PARTY CLAIMS

**A. Breach of Contract.**

12. The allegations contained in the paragraphs above are re-alleged and incorporated herein as if set forth in their entirety.

13. Vision, by assigning its rights, titles and interests under the Note without crediting an offset for the value of the Maintenance Obligations, breached its agreement with Comtran and Jetran that it would allow Comtran to offset the value of the Maintenance Obligations against the amounts due on the Note.

14. Vision is liable to Comtran, Jetran and Jaffe for all amounts of any judgment awarded to Club against Comtran or Jaffe in this case because it breached its agreement with Comtran and Jetran and that breach will cause Comtran, Jetran and Jaffe damages in the amount of any such judgment.

15. Pleading further and in the alternative, Vision breached the Leases by failing: (a) to perform maintenance and repairs to the Leased Aircraft and engines, (b) to maintain the engines of the Leased Aircraft in a Pratt & Whitney engine monitoring/maintenance program, (c) to make payments for a maintenance reserve on the Leased Aircrafts' engines and (d) to make payments for a reserve on the Leased Aircrafts' landing gear – all of which Vision would have had to pay for under the Leases if the offset agreement had not been reached.

16.     Vision is liable to Jetran for damages incurred due to Vision's breach of the Leases. Jetran agreed to forego collection of amounts owed under the Leases in exchange for the offset to which Vision agreed. Those damages include (a) the cost to perform maintenance checks and repairs to the Leased Aircraft, (b) the cost to repair the damaged L-Seal on one of the engines, (c) the loss in value to the engines on the Leased Aircraft due to Vision's failure to maintain them in the Pratt & Whitney monitoring/maintenance program, (d) the amounts due for the maintenance reserve on the Leased Aircrafts' engines and (e) the amounts due for the reserve on the Leased Aircrafts' landing gear.

**B. Fraudulent Inducement.**

17.     The allegations contained in the paragraphs above are re-alleged and incorporated herein as if set forth in their entirety.

18.     Pleading further and in the alternative, Vision is liable to Comtran, Jetran and Jaffe for all amounts of any judgment awarded to Club against Comtran or Jaffe in this case because Vision fraudulently induced Jetran into accepting the cash value instead of actual performance of the Maintenance Obligations and to offset the cash value against the Note.

19.     In order to induce Jetran to accept the cash value rather than actual performance, Vision promised that the value of the Maintenance Obligations would be offset against amounts owed under the Note.

20.     This promise was a material representation without which Jetran would not have made the agreement with Vision. Jetran relied on Vision's promise to credit the cash value of the Maintenance Obligations against the Note.

21.     Vision made this promise without the intention of honoring it and for the purpose of inducing Jetran into making the offset agreement. Vision did not honor its promise and

assigned its rights, titles and interests under the Note to Club without crediting an offset for the cash value of the Maintenance Obligations.

22. Because Jetran believed Vision would honor its promise, Jetran accepted the cash value, instead of performance of the Maintenance Obligations expecting that the value of those Maintenance Obligations would be credited as an offset against amounts due on the Note. Vision's fraudulent inducement will cause Comtran, Jetran and Jaffe damages in the amount of any judgment awarded to Club against Comtran or Jaffe in this case.

## C. Unjust Enrichment.

23. The allegations contained in the paragraphs above are re-alleged and incorporated herein as if set forth in their entirety.

24. Pleading further and in the alternative, Vision is liable to Comtran, Jetran and Jaffe for the amount of the Maintenance Obligations, which Comtran, Jetran and Vision agreed would be credited to Comtran as an offset against the amounts due under the Note.

25. Vision, by assigning its rights, titles and interests under the Note without crediting an offset for the value of the Maintenance Obligations, will be unjustly enriched by the amount of the Maintenance Obligations not credited to the Note as agreed by Vision.

26. Vision is liable to Comtran and Jetran for the amount of the Maintenance Obligations.

## D. Quantum Meruit.

27. The allegations contained in the paragraphs above are re-alleged and incorporated herein as if set forth in their entirety.

28. Pleading further and in the alternative, Jetran accepted the cash value of the Maintenance Obligations instead of actual performance, which Vision agreed would be credited

to Comtran as an offset against the amounts due under the Note. In accordance with this agreement, Jetran did in fact agree to accept the cash value instead of actual performance of the Maintenance Obligations owed under the Leases.

29. Vision, by assigning its rights, titles and interests under the Note without crediting an offset for the value of the Maintenance Obligation, deprived Comtran and Jetran of the value of the Maintenance Obligations not credited to the Note as promised by Vision.

30. Vision has been unjustly and unfairly enriched, in that Vision has benefitted by not having to pay for the Maintenance Obligations. It would be inequitable and unconscionable to permit Vision to retain the benefits of the agreement without compensation to Comtran and Jetran and to allow Vision to pass off the Note without any credit or offset.

31. Vision is liable to Comtran and Jetran for the amounts owed under the lease agreements.

### E. Suit for Accounting.

32. The parties agreed to offset the amounts due under the Leases against the Note. Vision admits that it agreed to the offset and Vision admits that it did not meet its obligations under the Leases. Accordingly, Comtran, Jetran and Jaffe seek an accounting for amounts owed by Vision pursuant to the Leases.

### V. ALTER EGO/PEIRCING CORPORATE VEIL

33. Pleading further and in the alternative, at the time of the offset agreement Bill Acor was the Secretary of Club and the President of Vision. Club is also a managing member of Vision and, according to Club's corporate representative, owns or controls 50-70% of Vision. Vision should not be permitted to avoid the obligations owed by Vision to Comtran through

sham and artifice. Likewise, Club (as an insider with knowledge of the offset) should not be permitted to be a *bona fide*, good faith holder in due course without knowledge.

## VI. ATTORNEYS' FEES

34. Comtran, Jetran and Jaffe seek from Vision their reasonable and necessary costs, including all attorneys' fees, incurred in the litigation of this suit. Comtran, Jetran and Jaffe are entitled to their attorneys' fees and costs under Chapter 38 of the Texas Civil Practice and Remedies Code.

## VII. PRAYER

WHEREFORE, Third-Party Plaintiffs Comtran International, Inc., Jetran, LLC and Morris D. Jaffe, Jr. pray that judgment be entered

a) in their favor and against Third-Party Defendant Vision Asset Co., LLC for all sums that may be adjudged against them in Plaintiff Club Excellence, Inc.'s favor and/or for all damages they incurred as a result of Third-Party Defendant Vision Asset Co., LLC's breach of the Maintenance Obligations under the Aircraft Lease Agreements and other causes of action alleged herein, and

b) for an award of their reasonable and necessary costs and attorneys' fees incurred in the litigation of this suit.

Respectfully submitted,

/s/ Jeff Miller
**JEFF MILLER**
State Bar No. 24008714
**MICHAEL BURNETT**
State Bar No. 00790399
**CHARLES K. COOPER**
State Bar No. 24074070
**ARMBRUST & BROWN, PLLC**
100 Congress Avenue, Suite 1300
Austin, Texas 78701
(512) 435-2300 – telephone
(512) 435-2360 – facsimile

**ATTORNEYS FOR COMTRAN INTERNATIONAL, INC., JETRAN, LLC AND MORRIS D. JAFFE, JR.**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on the following using the CM/ECF system on September 30, 2013:

| | |
|---|---|
| Allan B. Diamond | Richard D. Milvenan |
| J. Maxwell Beatty | Raymond White |
| Benjamin R. Garry | Blaire Knox |
| Diamond McCarthy, LLP | McGinnis, Lochridge & Kilgore, LLP |
| 909 Fannin Street, Suite 1500 | 600 Congress Avenue, Suite 2100 |
| Houston, Texas 77010 | Austin, Texas 78701 |

/s/ Jeff Miller
**JEFF MILLER**